THOMSON–HOUSTON ELECTRIC CO. v. SALEM ELECTRIC CO.

(Circuit Court, D. New Jersey.   September 19, 1905.)

PATENTS—VALIDITY AND INFRINGEMENT—SYSTEM OF ELECTRICAL DISTRIBUTION.
The Thomson and Rice patent, No. 413,293, for a system of electrical distribution especially adapted to. lighting purposes, and having for its objects to run translating devices in series and in multiple on one and the same system and from one and the same source of supply, was not anticipated, and discloses invention.   Also *held*, infringed as to claims 1, 3, 4, and 6.

In Equity.   Suit for infringement of patent.   On final hearing.

Richard N. Dyer, for complainant.
Joseph C. Fraley, for defendant

LANNING, District Judge.   The complainant's patent No. 413,293, for a system of electrical distribution, was applied for by Elihu Thomson and Edwin Wilbur Rice, Jr., on July 30, 1888, and granted to them October 22, 1889.   Subsequently it was assigned to the complainant, who brings this suit for an injunction to restrain the defendant from an alleged infringement, and for an accounting for profits. The defenses are invalidity of the patent and noninfringement.

The patentees, in the opening words of the specification in their letters patent, said:

"Our invention relates to systems of electric distribution generally, but is primarily designed for use in those systems employing alternating currents. The object of our invention is to run electric lamps—such, for instance, as incandescent lamps or other translating devices—in a series circuit on the same system with other translating devices run in multiple.   A further object of our invention is to run series incandescent or arc lamps from the same source of supply as incandescent lamps run in multiple."

The claims of the patent alleged to have been infringed are the first, third, fourth, and sixth, which are as follows:

"(1) A system of electric distribution, comprising constant-potential mains, having translating devices of any desired character in multiple between them; a series circuit of distribution connected across said mains and containing translating devices in series, and a current-regulator in said series circuit."

"(3) The herein described system of electric distribution, comprising alternating-current mains of constant potential, a series circuit containing translating devices, such as series lamps, means for keeping the current of said circuit constant, transformers or converters connected in multiple between said mains, and incandescent lamps or other translating devices supplied in multiple from said transformers.

"(4) In an alternating-current system of electric lighting, constant-potential mains having transformers or compensating coils connected in multiple between them, incandescent lamps supplied in multiple from subcircuits connected to said transformers, a series circuit connected between said mains and containing incandescent series lamps, and a current regulating device included in said series lamp circuit."

"(6) In an alternating-current system of distribution, alternating-current mains of constant potential, translating devices of any desired character supplied in multiple between said mains, a series circuit of distribution containing translating devices in series, a variable reactive coil in the series circuit, and devices responsive to the variations in the current on said circuit for adjusting the reaction of said coil."

The defense of invalidity of the patent in suit is based on the theory that, at the time the patent was applied for, its essential elements were old, and that the combination of those elements in the manner described in the patent involved no invention, but was a mere nonpatentable aggregation of them. Mr. Carl Hering, the defendant's principal expert witness, says of the patent:

"The series circuit in the patent in suit is old. Its regulation to adapt it to be connected to constant-potential mains is old. The multiple arrangement of transformers connected to constant-potential mains is old. . All this I have shown in previous answers. There is, therefore, no new problem involved, nor is there any new function of any of the elements, or any co-operation of the several devices in connecting two or more to the same circuit."

It will be observed that the two objects of the patent, as stated in its specifications, are (1) to run translating devices in series and in multiple on one and the same system, and (2) to run translating devices in series and in multiple from one and the same source of supply. In each of the four claims, which the complainant insists the defendant infringes, there are mentioned translating devices run in series and translating devices run in multiple; and these devices are shown to be connected with one and the same system and to have but one and the same source of supply. This is made clear by a careful reading of the claims. The first claim of invention is for a system of electric distribution having constant-potential mains, with which are separately connected (1) translating devices in multiple, and (2) translating devices in series, with a current regulator in the series circuit. The third claim is for a system of electric distribution having alternating-current, constant-potential mains, with which are separately connected (1) transformers or converters in multiple, with other translating devices supplied in multiple from the transformers, and (2) translating devices in series with means for keeping constant the current of the circuit. The fourth claim is for an alternating-current system of electric lighting having constant-potential mains, with which are separately connected (1) transformers or compensating coils in multiple, with incandescent lamps supplied in multiple from the subcircuits connected with the transformers, and (2) incandescent lamps in series, with a current regulating device in the series circuit. The sixth claim is for an alternating-current system of distribution having constant-potential mains, with which are separately connected (1) translating devices in multiple and (2) translating devices in series, with a variable reactive coil in the series circuit and devices responsive to the variations in the current for the purpose of adjusting the reaction of the coil.

In a normally operated series system of distribution there is required approximately constant current or amperage, with a variable potential or voltage; but in a normally operated multiple arc system of distribution there is required an approximately constant potential or voltage with a variable current or amperage. For a long time these opposing characteristics made it impossible to combine a series system and a multiple arc system in one general system, or to obtain for them their supplies of electric energy from a common source. Especially was this true concerning the operation of arc lights in series with incandescent

lights in multiple. Concerning the introduction of the system described in the patent in suit for street arc lighting, Prof. Charles P. Steinmetz, admittedly one of the world's greatest living electricians, says that:

"It permitted the operation of constant current circuits and constant-potential circuits from the same generating plant—that is, the same engines and dynamos—while before this these two types of circuits had to be operated from different machines, and every series circuit had to be operated from a separate machine, therefore requiring in the generating station not only two classes of machinery, but also a large multiplicity of units of relatively small size in the machines devoted to constant current distribution."

I do not understand that this statement is disputed. Prof. Steinmetz also shows quite clearly, I think, that the Shallenberger system (described in patent No. 390,990, applied for by Oliver B. Shallenberger October 1, 1887, and granted to him October 9, 1888, and which the defendant insists is an anticipation of the patent in suit) is not adapted to the use of arc lights in series on a constant potential. Figure 2 accompanying the Shallenberger patent shows a generator of alternating currents and constant-potential mains running therefrom, with which mains are separately connected a number of lamps run in series and a number of lamps run in multiple arc. In the series circuit each lamp is provided with a reactive coil, through which, if the lamp be destroyed, the current will pass, and thus preserve to the other lamps of the series their normal quantity of current. These reactive coils are suitable devices for a series circuit of incandescent lamps; but an arc lamp, when starting, is at short circuit by reason of the carbons being in contact. "Hence," says Prof. Steinmetz, "using the ordinary series arc lamp, as it is used on constant current circuits, in such a system as described in Figure 2 of Shallenberger's patent, and attempting to start the series circuit by connecting it across the mains, we would throw a short circuit on the generator, probably with the usual disastrous results. Furthermore, if the system should be operating and in one of the lamps the carbons, during feeding, come in contact with each other, this lamp short-circuits; but this device described by Shallenberger does not keep the same current, if one of the translating devices is short-circuited, and the result is that the current in the other lamps will be increased. What I understand the Shallenberger patent to mean is, therefore, a method of operating a constant-potential circuit of a voltage higher than that of an individual translating device, by the use of several translating devices in series, with protective devices. But it is not the operation of a constant-current circuit from a constant-potential supply. It is not possible, therefore, to operate any desired number of translating devices in series, or to cut out translating devices by short-circuiting them, as shown in the Thomson-Rice patent. While the Shallenberger invention, therefore, did not solve the problem, as far as it goes it has found a useful application in the operation of incandescent lamps in series with each other between high-potential, constant-potential mains, and in such numbers that the sum of the lamp voltages equals the voltage of the supply mains."

In the patent in suit there is but one reactive coil in a series circuit, and that is so constructed that parts or sections of it may be thrown, either by hand or automatically, into or out of the series circuit accord-

ing as more or less lamps in the series circuit may be in use. By this arrangement a practically constant current is maintained through the series of lamps used, whatever may be their number. In the use of arc lamps in series in connection with constant-potential mains, the complainant's system is without doubt greatly superior to that of the Shallenberger patent. And in the combination described in the patent in suit there is, in my opinion, patentable subject-matter and patentable novelty. Mr. William J. Jenks, an expert witness for the complainant, after comparing the system described in the patent in suit with that of the Shallenberger patent and with other systems, sums up as follows:

"As I understand the step of progress which was taken by the patentees of the patent here in suit beyond the most advanced ground previously occupied in the art of electrical distribution, it consisted in finding out and disclosing to the world through this patent how to combine a system of electrical distribution having main conductors extending from a generating source through a territory to be supplied, and having attached thereto, in multiple arc, branch circuits, including translators, each independently controllable and taking the entire potential of the system (such as transformers), which have established as the basis of system operation a standard of practically constant-potential, with one or more series circuits also connected across the main conductors, and supplying translators individually controllable as to use or non-use and to amount of work performed, each circuit being also rendered controllable as a unit by a single regulator capable of maintaining practically constant-current through its series of translators under all expected conditions of circuit resistance caused by changes in numbers of lamps or other causes, thus overcoming the former undesirable and impracticable results of serious changes of current caused by the conflicting conditions of two combined systems; these conditions being constant-potential at the terminals of the series circuits and variable resistances in those circuits."

This "step of progress" was an important one. It was not a step that, at the time of the application for the patent in suit, was obvious to those skilled in the art of electric distribution. The Shallenberger patent embodies the strongest elements of defense disclosed by the record of this case, but it is clear that the combination described in the patent in suit is not that described in the Shallenberger patent. Nor does any one of the other systems of electric distribution referred to in the proofs employ any combination that may be properly regarded as an anticipation of the patent in suit. In my judgment the defense of invalidity fails, and the complainant's patent must be sustained.

The testimony of Mr. Edwin W. Hammer satisfies me that the system of electric distribution employed by the defendant is an infringement of the complainant's patent.

There will be a decree for the complainant, adjudging the defendant an infringer of the first, third, fourth, and sixth claims of the patent in suit, and requiring the defendant to account for profits.